## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., <br><br> Non-Party Movant. | Misc. Civil Case No. <u>1:22-mc-75</u> <br><br> **Underlying Litigation:** <br><br> ***Thomas E. Reynolds, as trustee, v. Behrman Capital IV L.P., et al.*** <br><br> **Case No. 2:18-cv-00514-ACA** <br><br> **United States District Court for the Northern District of Alabama** |

## NON-PARTY MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO QUASH SUBPOENA OR FOR A PROTECTIVE ORDER</u>

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv) and 26(c), non-party Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. ("Mintz") submits this memorandum of law in support of its motion to quash the subpoena for a 30(b)(6) deposition of Mintz or, in the alternative, for a protective order.

### FACTUAL & PROCEDURAL BACKGROUND

**A.    Atherotech**

[Note: The following is summarized from the U.S. Court of Appeals for the Eleventh Circuit decision affirming summary judgment for Mintz in Plaintiff's prior action against Mintz in the U.S. District Court for the Northern District of Alabama

(the "Alabama district court").  *Reynolds v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, No. 20-13581, 2021 WL 4627905 (11th Cir. 2021).]

Atherotech, Inc. ("Atherotech") was a clinical laboratory and diagnostics company based in Birmingham, Alabama.  In 2011, Atherotech retained Mintz and, specifically, Mintz partner Hope Foster to provide legal and regulatory advice. Atherotech sought advice regarding the payment of processing and handling fees ("P&H fees") by Atherotech's clinical laboratory competitors.  While Atherotech paid physicians a P&H fee of $7 per specimen, Atherotech's chief competitor paid $20 or more, which Atherotech believed was more than fair market value and therefore illegal.  Atherotech sought Foster's advice for how to address the competitor's behavior.

In 2012, multiple *qui tam* actions were filed against Atherotech and other clinical laboratories over their P&H fee practices.  The U.S. Department of Justice ("DOJ") later opened an investigation into the same practices.  DOJ sought information from Atherotech about its P&H fee practices.  Atherotech retained Mintz to represent it with respect to the DOJ investigation.

In 2014, the Office of Inspector General of the Department of Health and Human Services ("OIG") issued a special fraud alert indicating that the payment of P&H fees was potentially illegal.  After the OIG's special fraud alert, Atherotech stopped paying P&H fees.

In 2016, Atherotech and related entities filed for Chapter 7 bankruptcy. The bankruptcy court appointed Plaintiff Thomas Reynolds as trustee of Atherotech and the other debtors' bankruptcy estate.

### B.      Foster's Prior Testimony

In December 2017, Plaintiff took Foster's examination under oath pursuant to Fed. R. Bankr. P. 2004. Relevant portions of the Rule 2004 examination are attached as Exhibit 1. The examination lasted a full day. *See id.* at 1 (noting 9:00 A.M. starting time) and 319 (noting 4:58 P.M. concluding time). The examination transcript is more than 300 pages long. Plaintiff's counsel asked Foster about 53 exhibits out of a pre-marked set of at least 100 exhibits. Ex. 1 at 4-11.

Plaintiff's prior 2004 examination of Foster covered the waterfront of her and Mintz's representation of Atherotech with respect to the P&H fees and DOJ investigation. Plaintiff asked Foster about dozens of communications she had with the company's management and board, starting with the first ones in January 2011, *id.* at 74-76; what issues Atherotech asked her to address, *id.* at 34; the regulatory environment around P&H fees, *id.* at 37-59; and the DOJ investigation of the clinical laboratory industry and Atherotech specifically, *id.* at 120, 171-73, 182-86, 197-201, and 306-10.

C.      **Plaintiff's Litigation**

In March 2018, Plaintiff sued Mintz and numerous other defendants in Alabama state court.  Exhibit 2, Complaint.  The case was removed to the Alabama district court.  *See Reynolds v. Behrman Capital IV L.P. et al.*, Case No. 2:18-cv-00514-ACA (N.D. Ala.).

On September 6, 2018, on consideration of Plaintiff's motion to remand and related briefing, the Alabama district court held that Plaintiff had improperly joined claims against three distinct sets of defendants and severed the claims by counts of the complaint into three separate cases.  *Id.*, Dkt. No. 77.  Thereafter, the three cases proceeded separately.  Relevant here are Plaintiffs' claims in Counts 1-7 and 11-13, which were severed into two separate cases that remained in federal court.[1]

1.  Plaintiff's claims against the Behrman Defendants

Counts 1-7 proceeded under the original case number, 2:18-cv-00514-ACA.  In those counts, Plaintiff asserted fraudulent transfer claims against Behrman Capital IV, L.P. ("Fund IV"), Behrman Brothers IV LLC ("Behrman Brothers"), and 27 affiliated entity and individual defendants (collectively, the "Behrman Defendants") "that are either companies or board members of companies that were shareholders of Atherotech Holdings," Atherotech's parent company.  *Id.* at 15.  Plaintiff's claims

---

[1] The Alabama district court remanded the case involving Counts 8-10 of the original complaint against Behrman Brothers Management Corporation.  N.D. Ala. Dkt. No. 77 at 19-21.

against the Behrman Defendants arose from a "dividend recapitalization" that resulted in payments totaling more than $30 million to the Behrman Defendants, which Plaintiff asserted were fraudulent transfers.  Ex. 2.

On September 3, 2019, the Court dismissed the case against the remaining defendants, Behrman Fund IV and Behrman Brothers, for lack of personal jurisdiction.  N.D. Ala. Case No. 2:18-cv-00514-ACA, Dkt No. 138.  Plaintiff appealed.  On February 23, 2021, the Eleventh Circuit issued an opinion reversing the dismissal.  *Reynolds v. Behrman Capital IV L.P.*, 988 F.3d 1314 (11th Cir. 2021). On October 26, 2021, the Eleventh Circuit's opinion was entered as judgment of the court, thus returning Plaintiff's case against Behrman Fund IV and Behrman Brothers to the Alabama district court.  N.D. Ala. Case No. 2:18-cv-00514-ACA, Dkt. No. 147.

On February 16, 2022, the Alabama district court entered a scheduling order in this case.  *Id.*, Dkt. No. 174.  The court set a fact discovery cut off of August 15, 2022, *id.*, ¶ 2.d, which was extended by the Court at the request of the parties to September 16, 2022. *See* Dkt. No. 190.  The court also prohibited Plaintiff from asking the remaining Behrman Defendants' 30(b)(6) witnesses questions that had already been covered in previously-taken Rule 2004 examinations of Behrman witnesses.  Dkt. No. 174., ¶ 11.

On July 25, 2022, Mintz was served with Plaintiff's subpoena seeking Mintz's testimony concerning five topics. *See* Exhibit 3. As discussed further below, three of the five topics cover material that was already covered at length in Foster's Rule 2004 examination.

2. <u>Plaintiff's claims against Mintz</u>

In Counts 11-13 of Plaintiff's original complaint, Plaintiff sued Mintz for alleged breach of contract and legal malpractice and also objected to Mintz's claim in Atherotech's bankruptcy proceeding for the unpaid balance of its fees. After the Alabama district court severed the cases, Plaintiff's case against Mintz was assigned Case No. 2:18-cv-01453-ACA.

On May 7, 2019, the Alabama district court entered a scheduling order in the case against Mintz. *See* Exhibit 4. The Alabama district court expressly "PROHIBIT[ED] Plaintiff from asking [Mintz's] Federal Rule of Civil Procedure 30(b)(6) representative the same questions he asked the Rule 30(b)(6) representative during the deposition conducted under Federal Rule of Bankruptcy Procedure 2004," i.e., Plaintiff's examination of Hope Foster from December 2017. *Id.*, ¶ 11. The Alabama district court further ordered that, one week before Plaintiff was to take Mintz's 30(b)(6) deposition, Plaintiff was required "to submit to [Mintz] … a general framework describing the areas on which the representative will be deposed." *Id.* If Mintz believed Plaintiff intended to ask "duplicative questions"—

questions that Plaintiff had already asked Hope Foster in the Rule 2004 examination—then Mintz was allowed to file objections to Plaintiff's deposition framework with the Alabama district court.  *Id.*

That procedure was never tested, however, because Plaintiff never sought to depose Mintz pursuant to Rule 30(b)(6), relying instead on the Rule 2004 examination.  That was hardly surprising, as the permitted scope of such examinations is significantly broader than FRCP depositions.

On July 28, 2020, the Alabama district court granted Mintz's motion for summary judgment.  *See* Exhibit 5.  The court found that "the undisputed evidence in this case establishes that Mintz Levin advised Atherotech both that paying P&H fees and that reporting competitors' payment of P&H fees carried risk."  *Id.* at 15. The court held that given the undisputed facts, "combined with the unsettled state of the law on P&H fees at the time Mintz Levin was giving its advice, no reasonable jury could find that Mintz Levin's advice was unreasonable."  *Id.* at 16.

Plaintiff appealed.  As noted above, the Eleventh Circuit affirmed.  *Reynolds v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, No. 20-13581, 2021 WL 4627905 (11th Cir. 2021).  The Eleventh Circuit held:

> Because at the time of Mintz Levin's advice to Atherotech the law was "unsettled" whether laboratories could pay physicians P&H fees that were equal to fair market value for the physician's services, Mintz Levin had no duty to advise Atherotech to stop paying P&H fees. The law firm's duty with respect to the payment of P&H fees and how to address the competitor's payment of higher P&H fees was to advise

Atherotech of the risks of various options and leave to the company the decision of what to do. Mintz Levin fulfilled that duty. The district court therefore properly granted summary judgment to the law firm on the trustee's claims….

*Id.* at *4.

**ARGUMENT & AUTHORITIES**

Plaintiff's effort to depose Mintz after having already examined Hope Foster in depth under the more generous procedures under Rule 2004 concerning substantially the same topics nearly five years ago is improper. This is heightened by the fact that Mintz endured three years of costly litigation in defense of Plaintiff's meritless claims of legal malpractice. Mintz respectfully asks this Court to quash Plaintiff's subpoena, or, alternatively, to issue a protective order.

**A.    Rule 45**

District courts must quash or modify a subpoena if it subjects a non-party to an "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "Whether a subpoena imposes an 'undue burden' depends on the specific facts of the case and courts '"must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it."'" *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017) (quoting *In re Ex Parte Application of Kleimar N.V.*, No. 16-MC-355, 220 F. Supp. 3d 517, 522, 2016 WL 6906712 at *3 (S.D.N.Y. 2016) (in turn quoting *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013)). "The Rule 45 'undue burden' standard requires district courts supervising discovery

to be generally sensitive to the costs imposed on third parties." *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007); *see also* Fed. R. Civ. P. 45(d)(1) (requiring district courts to enforce issuing party and attorney's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

In considering whether a subpoena imposed an undue burden on the non-party under Rule 45, the Court must also consider the factors expressed in Rule 26(b):

> (1) whether the discovery sought is "unreasonably cumulative or duplicative"; (2) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and (3) whether the discovery sought is "proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," see Fed. R. Civ. P. 26(b)(1), (2)(C).

*BuzzFeed*, 318 F. Supp. 3d at 358; *accord Watts*, 482 F.3d at 509.

### B.    Plaintiff's Subpoena Seeks Duplicative Discovery

Topics 1-3 of Plaintiff's subpoena seek to depose Mintz concerning (1) the DOJ investigation concerning Atherotech and communications with the Behrman Defendants regarding the investigation; (2) Atherotech's policy of paying P&H fees; and (3) Atherotech's reporting of its competitors conduct to DOJ.  All of these matters were covered extensively in 2017 in the examination of Hope Foster—which was conducted by the same counsel who continue to represent Plaintiff.

9

As noted above, Foster's examination lasted a full day.  The transcript covers more than 300 pages.  Plaintiff's examined her about 53 exhibits, which were pre-numbered to at least 100.  It is not conceivable that Plaintiff failed to ask Foster anything that was even remotely relevant to topics 1-3.

In *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98 (D.D.C. 2005), the defendant, Wyndham International, sought to depose a non-party witness whom Wyndham had previously deposed in an earlier case in which the witness, through her parents, had sued Wyndham.  Wyndham moved to compel the deposition, which the U.S. District Court for the Virgin Islands granted with limitations, and the witness filed a motion to quash in this Court.  *Id.* at 100-01.  This Court adopted the limitations imposed by the Virgin Islands district court prohibiting "any questioning or attempts to obtain information that correlates to, is duplicative of, or otherwise parallels the testimony given in any previous deposition(s)."  *Id.* at 101 (quoting the Virgin Islands district court's order), 104-05.[2]

Applying the same limitations to this situation, Plaintiff should not be allowed to depose Mintz on topics 1-3 at all.  There is no questioning about topics 1-3 that

---

[2] Mintz recognizes that *Flanagan* involved the deposition of a minor witness concerning sexual abuse.  However, the Court did not express that as a reason for limiting the scope of the deposition and in fact noted that the witness had granted media interviews, which weakened her claim of harm.  231 F.R.D. at 105.

would not correlate to, be duplicative of, or parallel Foster's previous testimony. That testimony was exhaustive of the topics.

The Alabama district court imposed comparable limitations on Plaintiff in the course of his meritless malpractice suit against Mintz.  As noted above, the Alabama district court prohibited Plaintiff from deposing Mintz about matters that had been covered in Foster's prior examination and required Plaintiff to submit a framework for any such deposition to Mintz so that Mintz could raise objections with the Alabama district court.

When faced with such limitations, Plaintiff declined to take Mintz's deposition.  The obvious reason is that Plaintiff had nothing left to ask Mintz or its attorneys about P&H fees, the DOJ investigation, and related matters that had not been covered in Ms. Foster's Rule 2004 examination.  The same is still true today.

Because the Alabama district court so restricted the deposition of Mintz *even in the case where Mintz was a party*, even more so should such restrictions apply to the present case, where Mintz is not a party to the litigation.

## C.    Providing Witnesses Will Be Costly

If Mintz is required to respond to Plaintiff's subpoena, it will be a costly endeavor.  As set forth above, topics 1-3 are duplicative of those covered in the Rule 2004 examination of Ms. Foster in 2017. If Mintz is required to provide testimony on those same topics again, Mintz will have to expend significant resources to

prepare Ms. Foster to testify again on matters that occurred over a decade ago and on which she has already given extensive testimony.  *See* Exhibit 6, Declaration of Michael S. Gardener ("Gardener Decl."), ¶ 7.

In addition, Mintz also will have to prepare a witness (either Ms. Foster or another Mintz lawyer) to testify as to topics 4 and 5 (disclosures to Houlihan Lokey and Madison Capital in connection with Atherotech's June 2013 loan). *Id.* at ¶ 8. With respect to topic 4 (disclosures to Houlihan Lokey), Mintz had no involvement in any disclosures to Houlihan Lokey and therefore has no responsive information. *Id.*  With respect to topic 5 (disclosures to Madison Capital), Mintz's involvement was limited to drafting a disclosure regarding the DOJ investigation and providing it to Atherotech and the Behrman defendants and discussing the draft disclosure with Atherotech's counsel handling the June 2013 loan transaction.  *Id.*  The firm itself made no disclosures to either Houlihan Lokey or Madison Capital.  *Id.*  Thus, there is little, if any, probative information that Mintz could provide in a deposition regarding these topics.  Notwithstanding, if Mintz is required to respond to the subpoena, it will have to expend significant time and resources to prepare a witness to answer questions on topics that Mintz had little to do with.

In short, for Mintz to prepare Ms. Foster and potentially another lawyer to provide responsive information concerning matters that occurred a decade ago will be a substantial task.  It will require those lawyers to review numerous documents,

confer with other Mintz lawyers who were involved in those matters, and work with in-house and outside counsel to anticipate Plaintiff's questioning. *Id.* All of these efforts could easily cost the firm in excess of $75,000. *Id.* at ¶ 10. These efforts far outweigh any need by Plaintiff to obtain the information in this case where Mintz has provided exhaustive information regarding topics 1-3 in a prior examination, and has little, if any, probative information to provide regarding topics 4 and 5.

### D.    The Deposition Is Harassing

When Atherotech filed for bankruptcy, Mintz was still owed $181,397.99 in legal fees. *Id.* at ¶ 11. Mintz filed a claim for the unpaid balance of its fees, to which Plaintiff objected.[3] *Id.* Plaintiff then sued Mintz on a spurious claim of malpractice. After three years of costly litigation, Mintz was exonerated by the Alabama district court on summary judgment. And yet Plaintiff appealed, only to have a unanimous panel of the Eleventh Circuit reject its claim. Now Plaintiff wants to depose Mintz concerning matters about which Hope Foster already testified at length nearly five years ago.

While Mintz certainly recognizes and honors the "right to every man's evidence," *see U.S. v. Nixon*, 418 U.S. 683, 709 (1974), discovery under the Federal Rules of Civil Procedure "is not boundless." *See E.E.O.C. v. District of Columbia*

---

[3] In March 2022, the Bankruptcy court approved the release of funds to Mintz to pay the full amount of legal fees owed by Atherotech. *See In re Atherotech, Inc.*, Case No. 16-00909-TOM (N.D. Ala. Bankr. Ct.), Dkt. No. 1945.

*Public Schools*, 217 F.R.D. 12, 14 (D.D.C. 2003).  "'[D]iscovery should be denied when a party's aim is to ... embarrass or harass the person from whom he seeks discovery,' rather than 'seek ... information' that may have 'bearing ... on issues in the case.'"  *Long v. Motion Picture Ass'n of Am.*, No. 19-CV-2088 (CRC), 2021 WL 5446278, at *9 (D.D.C. Nov. 22, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 & n.17 (1978)).

Under the circumstances presented here, Mintz respectfully submits that Plaintiff's attempt to depose it qualifies as harassment and should not be allowed.

### E.    Alternative Discovery Procedures Are Appropriate

While Mintz submits that it should not be required to give a deposition at all, Mintz is willing—and has proposed to Plaintiff—to provide discovery using alternative procedures.  As an initial matter, Foster's Rule 2004 examination should be admissible as if it had been taken in the present case.  If there are matters with respect to topics 1-3 that the parties in good faith believe were not addressed in the examination, then Mintz suggests that the parties submit written deposition questions.  With respect to topics 4 and 5, Mintz also suggests written deposition questions and would be willing to consider providing an affidavit by one of its partners concerning those matters.

## **CONCLUSION**

For the above-stated reasons, Mintz respectfully requests that this Court enter

an order quashing Plaintiff's subpoena or, alternatively, to issue a protective order.


Respectfully submitted,

/s/ *Jackson R. Sharman, III*
One of the Attorneys for Non-Party
Mintz, Levin, Cohn, Ferris, Glovsky,
and Popeo, P.C.

OF COUNSEL:
Jackson R. Sharman, III (DC Bar #428799)
*jsharman@lightfootlaw.com*
Wesley B. Gilchrist (*pro hac vice* forthcoming)
*wgilchrist@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
(205) 581-0700


*Attorneys for Defendant Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.*

## **CERTIFICATE OF SERVICE**

I certify that on August 9, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court, using the ECF system.  I further certify that a copy of the foregoing will be sent by email to counsel for the Plaintiff and Defendants in *Thomas E. Reynolds, as trustee, v. Behrman Capital IV L.P., et al.*, Case No. 2:18-cv-00514-ACA, pending in the United States District Court for the Northern District of Alabama.

*/s/ Jackson R. Sharman, III*
Of Counsel